IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK07-41827-TLS |
| | ) | |
| DAVID D. MARTI, | ) | CH. 13 |
| | ) | |
| Debtor. | ) | |

## **MEMORANDUM**

      Hearing was held in Lincoln, Nebraska, on March 12, 2008, on confirmation of Debtor's Chapter 13 plan (Fil. #9), an Objection (Fil.#11) and Amended Objection (Fil. #29) filed by the Chapter 13 Trustee, and a Response filed by Debtor (Fil. #18). John C. Hahn appeared for Debtor, and Marilyn Abbott appeared on behalf of the Chapter 13 Trustee. The parties requested time to submit further information after the hearing and a supplemental fact stipulation was filed on July 30, 2008. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(L).

      The underlying facts in this case are not in dispute, and the parties have entered into a Stipulation of Fact (Fil. #35) and a Supplemental Stipulation of Fact (Fil. #67). Since the fact stipulations are part of the record, all the facts will not be reiterated in this Order. However, certain facts are worth mentioning.

      Debtor is a 51-year-old physician/anesthesiologist. From November 2005 until October 2007, Debtor was not employed and was in a dispute involving his former medical practice. In late August 2007, Debtor secured new employment with the University of Nebraska Medical Center as a physician and faculty member, which new employment commenced October 22, 2007. Debtor's combined monthly wages in his new employment equal $18,333.33 per month.

      On September 28, 2007, one month after securing his new employment, Debtor filed this Chapter 13 proceeding. Debtor had no earned income in the six-month period prior to bankruptcy filing, from which current monthly income is ascertained. For means test purposes, Debtor calculated his current monthly income based on withdrawals he made from IRA accounts, which he listed as $6,666.67 per month. The result of Debtor's Form 22C calculation is that he has "above median" income, but negative disposable income. Accordingly, based on Form 22C, Debtor was not required to make any distributions to general unsecured creditors.

      As part of their fact stipulation, the parties furnished the Court with a hypothetical Form 22C based on Debtor's post-petition income of $18,333.33 per month. According to the hypothetical means test form, Debtor would have monthly disposable income of $2,851.40. The parties agree that such a disposable income amount would result in a pay-in-full plan.

The general unsecured claims filed in this case amount to $100,782.00. Debtor has no remaining 2007 federal or state tax liability. Under the plan as proposed by Debtor, distributions to general unsecured creditors would be approximately $12,700.00.

*Discussion*

The Chapter 13 Trustee's primary argument is that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") added an additional requirement for confirmation of a Chapter 13 plan that "the action of the debtor in filing the petition was in good faith." This requirement is set forth at 11 U.S.C. § 1325(a)(7). Further, § 1325(a)(3) continues to require the plan to be proposed in good faith. The Chapter 13 Trustee's position is straightforward: Debtor chose to file this bankruptcy petition one month <u>after</u> he learned that his salary would shortly be returning to the level of more than $18,000.00 per month. It is the Chapter 13 Trustee's position that these are unusual circumstances which trigger a lack of good faith in the filing of the petition and the plan. Since the means test uses a six-month backward-looking analysis of income, Debtor's decision to file shortly before a major increase in income results in an unfair manipulation of the Bankruptcy Code. Debtor strategically passed the means test despite having an ability to pay simply by the timing of the filing of his bankruptcy.

The purpose of Chapter 13 is to encourage debtors to make a sincere effort at repayment of debt, over time and via a confirmed plan of reorganization. If the trustee or the holder of an allowed unsecured claim objects to a plan, then the debtor must show that "all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." § 1325(b)(1)(B). Disposable income is the debtor's current monthly income less reasonably necessary expenses for the debtor and his dependents. § 1325(b)(2). In the Eighth Circuit, the caselaw has followed the "plain meaning" approach to post-BAPCPA disposable income computations. *Coop v. Frederickson (In re Frederickson)*, 375 B.R. 829 (B.A.P. 8th Cir. 2007) (involving an above-median debtor); *In re Rush*, 387 B.R. 26 (Bankr. W.D. Mo. 2008) (involving below-median debtors). This approach adheres to the statutory language and calculates projected disposable income for below-median debtors by using Form 22C's current monthly income and deducting Schedule J's monthly living expenses. *Rush*, 387 B.R. at 31-32). *See also In re Spraggins*, 386 B.R. 221 (Bankr. E.D. Wisc. 2008); *In re Meek*, 370 B.R. 294 (Bankr. D. Id. 2007); *In re Girodes*, 350 B.R. 31 (Bankr. M.D.N.C. 2006).

Interestingly, the Debtor completed his means test form as if the withdrawals from retirement plan accounts constitute "income" to be counted as "current monthly income" in performing the means test calculations. "Current monthly income" is defined by 11 U.S.C. § 101(10A) generally as the average monthly income from all sources that the debtor receives in the six months prior to filing. "Income" is not separately defined in the Code, but is defined in *Black's Law Dictionary* as "the return in money from one's business, labor, or capital invested; gains, profits, salary, wages, etc." Thus, Debtor's voluntary withdrawals from retirement savings are simply not income.

Therefore, the current monthly income is zero, so under § 1325(b)(1)(B), Debtor has no projected disposable income[1] to apply to the plan.

I turn then to the Trustee's primary argument, which is that Debtor's actions in filing this bankruptcy proceeding and proposing this plan were not in good faith. Specifically, the Trustee points out that if Debtor's post-petition income were used for means test purposes, a pay-in-full plan would be required.

Debtor argues that "ability to pay" is not a factor to be considered when determining whether a debtor has proposed a plan in good faith as required by § 1325(a)(3) because it is subsumed in other provisions of § 1325(b). *Educ. Assistance Corp. v. Zellner,* 827 F. 2d 1222, 1227 (8th Cir. 1987) (holding that the ability-to-pay criteria were subsumed in 11 U.S.C. § 1325(b) and not in the good faith standard of § 1325(a)(3)). In fact, based on *Zellner* and subsequent cases from the Eighth Circuit, this Court has determined that "[a] debtor does not fail the good faith test simply because of the ability to pay more than the means test result. There must be something else to trigger a lack of good faith in proposing a plan." *In re James,* 379 B.R. 903, 908 (Bankr. D. Neb. 2007).

Acknowledging the foregoing, the Trustee asserts that this is not simply a situation where the debtor has an actual ability to pay more than his means test result. The Trustee is correct – this is not a situation such as *James*, where the application of the means test produces what some may consider to be an unsatisfactory result. Instead, this case has that "something else" – in this situation the means test is meaningless. As discussed above, the "current monthly income" numbers used in the means test do not even reflect income. Debtor had no income prior to filing. This is an unusual situation where Debtor went from no income prior to filing to substantial income immediately after filing.

The Chapter 13 Trustee also points out that the new good-faith provision of 11 U.S.C. § 1325(a)(7) must have some independent significance. It was apparently included in the same section of BAPCPA that added the totality-of-circumstances/good faith test to Chapter 7 cases under 11 U.S.C. § 707(b)(3). Thus, arguably, it was intended as a "catch-all" for situations such as this which seem to fall outside the box of the statutory framework.

"Outside the box" is certainly an apt description for this case. Counsel for both parties did an admirable job of briefing the issues and attempting to apply the Bankruptcy Code and existing precedent to this situation. Admittedly, this case simply does not fit neatly into such an objective analysis. For purposes of determining whether the plan was proposed in good faith under § 1325(a)(3), this Court cannot merely defer to established precedent which says ability-to-pay factors should not be taken into account because they are subsumed into other sections of § 1325 (the means test). Instead, the totality-of-circumstances consideration, which does remain a part of

---

[1]"Projected disposable income" is the amount of disposable income extrapolated over the applicable commitment period. With negative disposable income, there is no applicable commitment period. *Frederickson*, 375 B.R. at 835.

the § 1325(a)(3) analysis,[2] reveals that the means test calculation is meaningless under the present circumstances. Further, § 1325(a)(7) seems to reinforce the need to consider unique situations using a totality-of-circumstances approach.

Here, the totality of the circumstances leads to one conclusion – that confirmation should be denied. It is clear that despite the results of the means test, this Debtor has substantial income and has the ability to pay all creditors in full. The timing of the filing of this bankruptcy case and the plan proposed by Debtor indicate that Debtor's intent is to take advantage of what he perceives as a "loophole" in the calculation of his current monthly income. Debtor knew that his income was going to rise dramatically post-petition, yet he fails to propose a pay-in-full plan as he would be required to do if his filing date were just six months later. Debtor's bankruptcy filing and plan appear to be an attempt to unfairly manipulate the Bankruptcy Code and do not represent a good faith effort to pay creditors. Under the unique circumstances of this case, I find that Debtor has failed to meet the good faith requirements of 11 U.S.C. § 1325(a)(3) and (7). Therefore, confirmation should be denied.

A separate order will be entered.

DATED: August 4, 2008.

> BY THE COURT:
>
> /s/ Thomas L. Saladino
> Chief Judge

Notice given by the Court to:
    \*John C. Hahn
    Marilyn Abbott/Kathleen Laughlin
    U.S. Trustee

Movant (\*) is responsible for giving notice to other parties if required by rule or statute.

---

[2] *Handeen v. LeMaire (In re LeMaire)*, 898 F.2d 1346, 1349 (8th Cir. 1990) (noting that *Zellner*, while modifying the good-faith test, preserved the totality-of-circumstances approach).